## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 95-KA-01249-SCT

*RUSSELL BENJAMIN CHAPPELLE*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/06/95 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KEITH PISARICH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 7/31/97 |
| MOTION FOR REHEARING FILED: | 8/19/97 |
| MANDATE ISSUED: | 12/3/97 |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

Russell Benjamin Chappelle was indicted by the Hancock County Grand Jury on May 1, 1995, in a multi-count indictment for:

> Count I: Shooting into a Dwelling or building usually occupied by persons (maximum sentence: 10 years)

> Counts II & III: Aggravated Assault on Peace Officer (maximum sentence: 30 years per count)

> Counts IV,V, & VI: Aggravated Assault (maximum sentence: 20 years per count).

On June 28, 1995, following a lengthy plea hearing, Chappelle pled guilty to all six counts alleged in the indictment. This plea was accompanied by the standard written plea petition. At all times,

Chappelle was assisted by counsel. At the plea hearing, Judge Vlahos questioned Chappelle extensively concerning his actions. The trial judge also questioned Chappelle in detail regarding the possible maximum sentence for each count of the indictment. Chappelle answered correctly on every count. The maximum allowable sentence for the six counts was 130 years in the penitentiary. Vlahos even warned Chappelle "that you need to dispel any hopes of probation. There's absolutely no way in the world, unless the Lord takes me and I die before I sentence you, there's no way in the world that you're going to get probation on this matter."

At the plea hearing, the trial court asked Chappelle if he understood that he had a right to a trial and explained other constitutional rights which would be waived by pleading guilty. Chappelle answered in the affirmative to all questions. At this hearing, the trial court was also told of the State's recommendations concerning the imposition of a lighter sentence such as probation. Chappelle then entered an open plea on all six counts. Chappelle then requested that the court not enter a sentence until after the completion of a pre-sentence report. The court agreed.

On July 6, 1995, a sentencing hearing was held for Chappelle. At this hearing, the trial court heard the testimony of the manager of the Waffles Plus Restaurant, the Highway Patrol Officer who first arrived at the scene, Chappelle's parents, and Chappelle's minister. The trial court also considered Chappelle's pre-sentence report and testimony concerning Chappelle's mental condition. In addition, the State reinformed the judge that even though Chappelle was giving an open plea, the State had a previous recommendation.

The trial court then sentenced Chappelle as follows:

> I impose the following sentence: In cause number 8049, count number one you're hereby sentenced to serve 10 years with the Mississippi Department of Corrections. In count number two you're hereby sentenced to serve 30 years with the Mississippi Department of Corrections. And in count number three you're hereby sentenced to serve 20 years with the Mississippi Department of Corrections. And count number four, five and six you're hereby sentenced to serve 20 years with the Mississippi Department of Corrections. Count six is going to run concurrent with count five. Count six and five is going to run concurrent with count four. Count six, five and four are going to run concurrent with three, two and one. But three is going to run consecutive with two, and two is going to run consecutive with one, giving you a total of 60 years to serve with the Mississippi Department of Corrections. That will be the ruling of the court.

Aggrieved by the length of sentence imposed, Chappelle filed a Motion to Reconsider Sentence, asserting that the sentence was partially based on false testimony from the manager of the Waffles Plus. The trial court found, after reviewing the record, that the sentence was in no way based on the testimony of the Waffles Plus manager.

In addition, Chappelle filed a Motion to Withdraw Plea of Guilty, asserting that:

> Defendant entered the above-stated pleas of Guilty . . . under the mistaken impression that the State had recommended to the Court a maximum sentence of twenty (20) years to serve in the custody of the Department of Corrections and would not have entered said pleas of Guilty had he been aware of the possibility of receiving the above-mentioned sentence sixty (60) years

incarceration.

Furthermore, the defendant asserted that:

> At the time he allegedly committed the offenses charged in this cause and at the time of entering his pleas of guilty, [he] was unable to distinguish between right and wrong and was unable to materially assist in his own defense, being in fact insane within the meaning of **Miss. Code Ann. §** 99-13-3.

Following another extensive hearing, the trial court found "that Defendant was cognizant during the incident, and there is nothing to indicate that Defendant didn't know the difference between right and wrong." At the reconsideration hearing, the trial court inquired repeatedly into Chappelle's mental condition. The trial court then found the Defendant's motion to be procedurally barred due to the failure of the Defendant to raise the defense either prior to pleading guilty or at the sentencing hearing.

Aggrieved by this decision, Chappelle appeals to this Court.

## STATEMENT OF THE ISSUES

**1. THE MOTION TO WITHDRAW THE PLEA OF GUILTY WAS TIMELY AND REASONABLY FILED APPROXIMATELY ONE WEEK FOLLOWING SENTENCING.**

**2. THE INDICTMENT CHARGING THE OFFENSE OF ATTEMPTED AGGRAVATED ASSAULT IS SUBSTANTIALLY DEFECTIVE IF IT DOES NOT SET OUT AN OVERT ACT OF THE ATTEMPT.**

**3. THE TRIAL JUDGE SENTENCING A DEFENDANT ON AN "OPEN PLEA" SHOULD BE INFORMED BEFORE SENTENCING OF ANY PREVIOUS RECOMMENDATIONS BY THE STATE.**

## STATEMENT OF THE FACTS

The Defendant, who was only nineteen years-old at the time of the incident, was living with his parents in Sims, Alabama, where he was enrolled as an 11th grade student. After the Defendant's fifteen year-old girlfriend became pregnant, her parents did not want her to see the Defendant. They also disapproved of any marriage involving Chappelle. Furthermore, they wanted her to have an abortion and even tried to persuade the Defendant to convince her to have one.

Prior to November 5, 1994, the Defendant and his girlfriend had run away from their parents and were en route back from New Orleans. Prior to the night of the incident, they had traveled to north Alabama to visit relatives. Chappelle had taken some guns from his girlfriend's father to sell at a pawn shop. The Defendant was drinking alcoholic beverages, and there was a discussion of possible suicide.

Kim Schroeder, the manager of Waffles Plus on Highway 603, was working that night. Ms. Schroeder was outside the restaurant with another person cleaning up in the parking lot area. She

watched the Defendant and his girlfriend pull up and begin to argue. Ms. Schroeder finished cleaning up and went back into the restaurant. Then she noticed the Defendant fire a shot that blew out a window in the front of the building. She proceeded to get the customers and her employees to the safety of a backroom.

The Defendant's girlfriend was outside the restaurant using the phone to call her parents. She told her parents that the Defendant was trying to kill her, and she feared for her life. Upon hearing the shot, she came running into the restaurant. The manager, Ms. Schroeder, put the girl in the commissary and then left to call the police. While trying to reach the phone, the manager saw Chappelle, and she ran out of the back of the restaurant and got into her truck. She then saw a trooper's car in front of the restaurant and assumed that the trooper had arrested Chappelle. When she opened the back door to return for her employees and customers, she found herself face to face with the Defendant. He grabbed her by the throat, pointed a 12-gauge shotgun at her head, and asked for his girlfriend. Fearing for her life, the manager told Chappelle that she had run out of the back of the restaurant. The Defendant released Ms. Schroeder and ran out the back door. Ms. Schroeder then closed the back door and called 911.

Carnegie, a State Trooper, was on duty at a nearby roadblock. He was informed that someone was standing on the side of the road shooting at passing vehicles. Carnegie reported the information to his fellow officers and then left with Officer Joe Richardson to investigate. When he arrived at the Waffles Plus, he could see the Defendant waving his gun and people scrambling for cover. Carnegie then entered the restaurant to assist the frightened patrons in their escape from the restaurant. Carnegie observed the Defendant run into the back of the restaurant. Soon thereafter, the Defendant re-entered the main room and fired into the front window of the restaurant, in the general direction of Carnegie.

The Defendant then exited through the back of the restaurant. Carnegie exited from the front and circled around the restaurant. He began to exchange gunfire with the Defendant. By this time, more highway patrolmen began to arrive from the nearby roadblock. Chappelle fired numerous times at the arriving patrolmen and shot out the front windshield of one vehicle. Chappelle was soon shot in the shoulder by one of the officers. The officers arrested Chappelle, following a brief altercation which required the officers to wrestle the Defendant to the ground.

Chappelle was charged with one count of shooting or discharging a shotgun into a building, two counts of aggravated assault on a police officer, and three counts of aggravated assault. Following a plea hearing, he pled guilty to all six indictments. He was sentenced to sixty years in the penitentiary for the shootout.

## DISCUSSION

### I. THE MOTION TO WITHDRAW THE PLEA OF GUILTY WAS TIMELY AND REASONABLY FILED APPROXIMATELY ONE WEEK FOLLOWING SENTENCING.

Chappelle asserts that the trial court erred by finding his Motion to Withdraw Guilty Plea to be procedurally barred. In his motion, Chappelle states that his guilty pleas were based on "a mistaken impression that the State had recommended to the Court a maximum sentence of twenty (20) years."

In addition, Chappelle asserts that he was "unable to distinguish between right and wrong and was materially unable to materially assist in his own defense."

## Mistaken Impressions on Sentencing Recommendations

In *Gardner v. State*, 531 So.2d 805, 809 (Miss. 1988), this Court refused to set aside a guilty plea allegedly entered into based on the statements of the Defendant's attorney regarding promised sentencing. We found that the extensive questioning and explanations to the Defendant concerning his rights and consequences of his pleas "were sufficient to render the plea voluntary." *Id.*

While it is true that this Court has liberally reviewed whether the defendant based his plea agreement on falsely given information by defense counsel, this Court has not been nearly as liberal with its inquiry into reliance on state agreements. As seen in *Martin v. State*, 635 So. 2d 1352, 1354-55 (Miss. 1994), where the "circuit judge did not participate in the plea bargaining discussion between [the defendant] and the State . . . . the state's sentence recommendation was not binding on the court." *Martin*, 635 So. 2d at 1355. Furthermore, where the court informed the accused "that he is not bound to accept the state's recommendation, it is not error if the trial court does not follow the prosecutor's sentencing recommendation." *Moore v. State*, 394 So. 2d 1336, 1337 (Miss. 1981). In *Moore*, the judge carefully inquired into the defendant's understanding of the legal and constitutional rights being waived, minimum and maximum penalties, and that the court was not required to follow the state's recommendations. The defendant acknowledged all points. The judge then accepted the plea and the recommended sentence. However, the trial court refused to follow the recommendations and sentenced the defendant to a longer period. *Moore*, 394 So. 2d at 1337. The test as stated in *Moore* is therefore, whether "the defendant and his attorney were carefully and fully advised that the district attorney's recommendation was just that -- a recommendation only -- and that the court was in no wise bound by it." *Id.*

It is important to note, as in *Sanders, Moore,* and *Gardner*, the extensive questioning and discussion held between the trial court judge and Chappelle. At the plea hearing, the questioning of the trial court judge of Chappelle was extensive and thorough regarding potential sentencing. The trial judge was straightforward and clear about the extent of the potential sentence:

> BY THE COURT: Mr. Chappelle, I think that you need to dispel any hopes of probation. There's just absolutely no way in the world, unless the Lord takes me and I die before I sentence you, there's no way in the world that you're going to get probation on this.

> BY MR. DANIELS (Defense Attorney): We understand that Your honor. And we understand there's a wide range of discretion in terms of the sentence.

> BY THE COURT: We're looking at 130 years and that's a wide area.

Furthermore, when the trial judge asked the defendant how many years he could receive for each count of the crime, the defendant knew the exact maximum sentence:

> BY THE COURT: Why are you before the court?

> BY MR. CHAPPELLE: Shooting into a dwelling, aggravated assault.

BY THE COURT: Well let me start off. In 8049 it's charged that in Count 1 that you did unlawfully and feloniously shoot and discharge a shotgun into Waffle Plus on Highway 603. Are you familiar with that charge?

BY MR. CHAPPELLE: Yes, sir.

BY THE COURT: Have you gone over it with your attorney --

BY MR. CHAPPELLE: Yes, sir.

BY THE COURT: -- Mr. Daniels. You went over that charge with him?

BY MR. CHAPPELLE: Yes, sir.

BY THE COURT: And did he tell you how many years you can go to the penitentiary on that charge?

BY MR. CHAPPELLE: Ten years.

BY THE COURT: Ten years.

The court followed this procedure with each count. The Defendant knew the maximum sentence for each count, without prompting from his attorney.

It is clear that the trial court is not bound by the plea agreement where the court informed the accused "that he is not bound to accept the state's recommendation, it is not error if the trial court does not follow the prosecutor's sentencing recommendation." *Moore v. State*, 394 So. 2d 1336, 1337 (Miss. 1981). Furthermore, in the case *sub judice,* since there was not actually an agreement, but rather the defendant pled under an open plea, the defendant can only rely upon the mercy of the court.

As noted in *Wilson v. State*, 577 So. 2d 394, 397-98 (Miss. 1991), "[i]t is not enough to ask an accused whether counsel has explained his constitutional rights. Nor is a standardized petition to enter a plea sufficient standing alone. The court must go further and determine in a face-to-face exchange in open court that the accused knows and understands the rights to which he is entitled." *Wilson v. State*, 577 So.2d at 397-398. This was clearly the case for Chappelle.

Therefore, the decision of the trial court is affirmed as to this issue.

### Procedural Bar on Raising Issue of Mental Incompetency

In his request for reconsideration of sentencing, Chappelle raised for the first time the issue of mental incompetency. Even though this motion for reconsideration was made soon after his sentencing, it was still tardy. Defenses such as mental incompetency should be raised at the plea hearing or at the latest the sentencing hearing. Not only were there numerous occasions for the defendant to raise the issue of mental incompetency, but there were also sufficient opportunities for the court to observe Chappelle's behavior and demeanor. No mention, with the exception of some testimony concerning the effects of a car wreck, was made concerning the Defendant's mental state. There is no merit as to this issue. Therefore, the ruling of the trial court is affirmed.

## II. THE INDICTMENT CHARGING THE OFFENSE OF ATTEMPTED AGGRAVATED ASSAULT IS SUBSTANTIALLY DEFECTIVE IF IT DOES NOT SET OUT AN OVERT ACT OF THE ATTEMPT.

Chappelle asserts that the indictment's five counts of "attempted aggravated assault" were insufficient in their failure to charge the necessary elements of the crime of attempted aggravated assault. "It is elemental that every person accused of a crime has the legal right to be informed properly of the charges under which he is to be tried," *Joshua v. State*, 445 So. 2d 221, 221 (Miss. 1984). In situations involving attempts, such as in the case *sub judice*, the indictment "requires proof of an overt act in order to sustain a conviction of an attempt to commit a crime." *Joshua*, 445 So. 2d at 222 (citing *Bucklew v. State*, 206 So. 2d 200 (Miss. 1968)).

Chappelle was indicted on five counts of violating **Miss. Code Ann. §** 97-3-7 (2)(1994) which reads as follows:

> (2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or *(b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm*; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the penitentiary for not more than twenty (20) years. Provided, however, a person convicted of aggravated assault (a) upon a statewide elected official, law enforcement officer, fireman, emergency medical personnel, superintendent, principal, teacher or other instructional personnel and school attendance officers or school bus driver while such statewide elected official, law enforcement officer, fireman, emergency medical personnel, superintendent, principal, teacher or other instructional personnel and school attendance officers or school bus driver is acting within the scope of his duty, office or employment, or (b) upon a legislator while the Legislature is in regular or extraordinary session shall be punished by a fine of not more than Five Thousand Dollars ($5,000.00) or by imprisonment for not more than thirty (30) years, or both.

**Miss. Code Ann. §** 97-3-7 (1994)(emphasis added).

This Court, in *Joshua v. State*, 445 So. 2d 221, 222 (Miss. 1984), examined the sufficiency of an indictment for aggravated assault. The indictment in *Joshua* read in relevant part as follows, "[the defendant] did, with intent, willfully, unlawfully and feloniously attempt to cause serious bodily injury to the body of Dennis Wayne Abel who was then and there a duly appointed and presently acting law enforcement officer." *Joshua*, 445 So. 2d at 222. This Court found the indictment insufficient in its failure to set forth an overt act even though it tracked verbatim the language of the statute. The lack of specificity in listing the actual overt act left the defendant unable to know with which act he was being charged. *Id.* at 223.

*Joshua* was distinguished in *Ward v. State*, 479 So. 2d 713, 715 (Miss. 1985) due to the fact that the Defendant was being charged with a completed act. Therefore, the lack of a set overt act was not fatal. Furthermore, we are reminded in *Ward* that "the general rule is that where an indictment tracks the language of a criminal statute it is sufficient to inform the accused of the charge against him."

*Ward*, 479 So. 2d at 715 (citing *Hickombottom v. State*, 409 So. 2d 1337 (Miss. 1982); *Anthony v. State*, 349 So. 2d 1066 (Miss. 1977); *State v. Labella*, 232 So. 2d 354 (Miss. 1970)). However, *Ward* also warns of the considerable latitude of varying factual situations with which this statute has been used and states "in view of the availability of this criminal charge in many factual settings, it is advisable to set forth in an indictment the factual situation which manifests indifference to human life." *Ward*, 479 So. 2d at 715.

The case *sub judice* is readily distinguishable from the fatal indictment found in *Joshua*. In *Joshua*, the defendant filed a motion to quash the indictment prior to trial. This simple motion preserved Joshua's right to appeal. "The Court was fully informed of the indictment's defect by appellant's motion to quash." *Joshua*, 445 So. 2d at 223. However, in the case *sub judice*, the defendant did not object to the original indictment. Therefore, this error is not preserved before this Court.

### III. THE TRIAL JUDGE SENTENCING A DEFENDANT ON AN "OPEN PLEA" SHOULD BE INFORMED BEFORE SENTENCING OF ANY PREVIOUS RECOMMENDATIONS BY THE STATE.

Chappelle asserts that the trial court erred by not being informed of previous recommendations made by the state prior to the Defendant's "open plea." If the trial court had known about the State's recommendation that Chappelle should receive twenty years, the judge would not have sentenced Chappelle to sixty years. The State responds that this is facially incorrect stating that "[e]ven a cursory reading of Judge Vlahos' sentencing of Chappelle indicates that it clearly would have made no difference to him even if he had known what the State's early sentencing recommendations had been." While the State is correct in its argument, neither party cites any authority to support their position.

The State asserts that this contention of error is procedurally barred due to the Defendant's failure to object to the omission of the recommendations at an earlier time.

After a thorough review of the record, it is clear that the trial court knew of the previous recommendations. We are reminded of our recent decision in *Simpson v. State*, 678 So. 2d 712, 717 (Miss. 1996) where the defendant made claims of another "real plea bargain" of which the court was not informed. This Court found the Defendant's silence at the time of entering the plea to be telling concerning other possible recommendations. As in *Simpson*, Chappelle received excellent hearings with an active judge. Chappelle could have objected at the time he entered his plea, instead he remained silent. Therefore, there is no merit in this contention of error.

### CONCLUSION

Chappelle makes no argument warranting a reversal of the trial judge. The issues presented are without merit. Therefore, the judgment is affirmed.

**COUNT ONE: CONVICTION OF SHOOTING INTO A DWELLING AND SENTENCE OF TEN (10) YEARS AFFIRMED. COUNT TWO: CONVICTION OF AGGRAVATED ASSAULT ON A PEACE OFFICER AND SENTENCE OF THIRTY (30) YEARS AFFIRMED. SENTENCE IN COUNT TWO SHALL RUN CONSECUTIVELY WITH SENTENCE IN COUNT ONE. COUNT THREE: CONVICTION OF AGGRAVATED**

ASSAULT ON A PEACE OFFICER AND SENTENCE OF TWENTY (20) YEARS AFFIRMED. SENTENCE IN COUNT THREE SHALL RUN CONSECUTIVELY WITH SENTENCE IN COUNT TWO. COUNT FOUR: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS AFFIRMED. SENTENCE IN COUNT FOUR SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT FIVE. COUNT FIVE: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS AFFIRMED. SENTENCE IN COUNT FIVE SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT THREE. COUNT SIX: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS AFFIRMED. SENTENCE IN COUNT SIX SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT FOUR, FOR A TOTAL OF SIXTY (60) YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.

PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.